**STATE OF LOUISIANA**
**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

**Department Regulation**
**No. C-02-006**

**05 December 2014**

**FIELD OPERATIONS**
**Security**
**Use of Force**

1. **AUTHORITY:** Secretary of the Department of Public Safety and Corrections as contained in Chapter 9 of Title 36 and C.Cr.P. Art. 227.1.

2. **REFERENCES:** Bailey v. Turner, 736 F.2d 963 (U.S. 4th Cir. 1984); Soto v. Dickey, 36 Cr.L 2068 (U.S. 7th Cir. 1984); Beard v. Stephens, 372 F. 2d 685 (5th Cir. 1967); In re : Riddle, 57 Cal. 2d 843, 372 P. 2d 304 (1962); ACA Model Use of Force Policy; ACA Standards 4-4090 through 4-4092, 4-4173, 4-4190, 4-4191, 4-4199, 4-4201 through 4-4206 and 4-4405 (Adult Correctional Institutions); Department Regulation Nos. B-06-001 "Health Care," C-01-008 "Firearms and Weaponry Training," C-01-016 "Canine Units," C-02-006A "Use of TASER®," C-03-003 "Escorted Absences," C-05-001 "Activity Reports/Unusual Occurrence Reports Operational Units" and C-05-001A "Serious Unusual Occurrence Review Panel."

3. **PURPOSE:** To provide guidelines in accordance with acceptable law enforcement practices to govern the use of force and its limitations and to describe prohibited activities. This regulation is not designed to discourage employees from using force when it is necessary, but to assist them in acting reasonably when confronted with situations requiring the use of force.

4. **APPLICABILITY:** Deputy Secretary, Chief of Operations, Regional Wardens, Wardens and Director, Regional Directors and District Administrators of Probation and Parole. Each Unit Head is responsible for ensuring that appropriate unit written policy and procedures are in place to comply with the provisions of this regulation.

5. **POLICY:** It is the Secretary's policy that all reasonable steps are to be taken to minimize situations requiring the use of force by staff against offenders and to minimize the amount of force used in those situations. It is recognized, however, that force may be necessary to accomplish the mission and goals of the Department to provide for public safety, staff and offender safety and the maintenance of stability within the institutions.

   Each unit shall define specific written procedures based on the force continuum to govern the application methods for each type of weapon (refer to attached Weapons

List) in accordance with the guidelines established by this regulation and the specific circumstances for which each weapon shall be utilized.

6. **DEFINITIONS:**

A. **Electronic Muscular Disruption (EMD) Device:** A device that utilizes electro-muscular disruption technology that disrupts the body's ability to communicate messages from the brain to the muscles, causing motor skill dysfunction. For the purpose of this regulation, EMD's include only the electronic capture shield, electronic restraint belt system and electronic transport vest. (The TASER® is also considered an EMD; however, refer to Department Regulation No. C-02-006A "Use of TASER®" for specific procedures regarding use of the TASER®.)

B. **Excessive Force:** Force is excessive when the resulting application of force is inappropriate to the circumstances either during an incident or in the aftermath of an incident.

C. **Force:** The application of a technique, action or device to compel a change in the actions of another person, which usually will result in compliance with a desired behavior, submission to authority or to deescalate a threatening behavior.

D. **Force Continuum:** Broad categories of force, in identifiable escalating/de-escalating stages of intensity, in response to an individual's actions. The categories are commonly identified as officer presence, verbal direction or command, soft empty-hand control, hand-held chemical spray or EMD devices, hard empty-hand control, batons and firearms. An individual's actions may be defined in broad categories including full compliance to commands, verbal uncooperativeness, passive resistance, active resistance, active aggression and aggravated active aggression (lethal force.)

E. **Less Lethal Force:** Defensive techniques or weapons that do not normally nor are intended, when properly applied, to cause death or serious bodily injury.

F. **Less Lethal Weapons:** Weapons designed to reduce the potential of causing serious physical injury or death. Use is restricted to situations where higher levels of force are unnecessary and lesser levels are inappropriate or ineffective. Less lethal weapons include:

1) **Chemical Agents and Munitions**: Tear gas, mace spray or irritant dusts are chemical agents that cause irritation to the eyes, skin or respiratory system. Chemicals may be administered directly through a hand-held aerosol spray or at longer ranges by being fired or dispersed out of a launcher.

2) **Intermediate/Impact Weapons:** Examples include batons and shields which are available options in the force continuum.

G. **Lethal Force:** Any use of force reasonably calculated in the manner used to produce death or serious bodily injury.

H. **Lethal Weapons:** Any weapon reasonably calculated in the manner used, to produce death or serious bodily injury.

I. **Necessary Force:** Force used when all other options have been exhausted, unavailable or are not feasible.

J. **Reasonable Force:** Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from bodily injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances.

K. **Restraints:** Mechanical, electronic or other devices used in the force continuum to aid in the restriction of an individual's bodily movement for security purposes. (See Health Care Policy No. HC-29 "Utilization of Restraints for Medical and Mental Health Management Orders" for information concerning the use of restraints for medical and mental health purposes.)

L. **Severe Mental Health Illness:** A chronic or acute mental illness that impairs the offender's ability to maintain safety of self and others and maintain activities of daily functioning.

M. **Severely Developmentally Delayed:** An intellectual disability that impairs the offender's ability to provide self care or maintain their safety. In addition, this type of impairment may render the offender vulnerable to victimization by others.

N. **Unit Head:** The head of an operational unit, specifically, the Warden and Director of Probation and Parole

Note: See the attached Weapons List for items authorized in Sections 6.A., F., H. and K.

**7. TRAINING:**

A. All Correctional Officers and other appropriate employees shall be provided a copy of the current use of force policy and thoroughly trained pursuant to

Department Regulation No. C-01-008 "Firearms and Weaponry Training" before being authorized to carry any weapon. Authorized employees shall be instructed in accordance with the regulation, including its policies and procedures, and shall be provided with necessary training and retraining at least annually. Employees shall adhere to the principles and practices of the regulation during departmentally approved training.

B. Probation and Parole Officers shall be trained in and shall adhere to the Division of Probation and Parole's Firearms Training Policy No. 402 "Use of Firearms and Certification to Carry" and Chapter 7 of the Probation and Parole Officer's Manual "Arrest, Transportation, Use of Force and Firearms."

C. Only those authorized employees who have successfully completed specialized training and/or qualification in the operation and use of less lethal and/or lethal weapons may use such weapons.

D. All Correctional and Probation and Parole Officers shall be trained in approved methods of self-defense and the use of force continuum.

**8. REPORTING REQUIREMENTS:**

A. All situations involving the use of force as outlined in this regulation shall be submitted to the Unit Head in writing. All written reports shall be prepared and submitted to the Unit Head as soon as possible after the incident, but no later than the conclusion of the tour of duty and shall be reviewed by the Unit Head or designee.

NOTE: This review does not include incidents where mechanical restraints are applied to an offender in a calm, non-hostile situation where no other use of force was required, i.e., instructing an offender to allow an officer to apply handcuffs in order to be escorted to the cell block following a rule violation.

B. The Unit Head or designee shall investigate all allegations of improper use of force and shall notify other authorities, as appropriate.

C. Reporting in accordance with Department Regulation No. C-05-001 “Activity Reports/Unusual Occurrence Reports Operational Units” is required.

D. Administrative review of use of force incidents shall be conducted in accordance with the provisions of Department Regulation Nos. C-01-008 "Firearms and Weaponry Training" and C-05-001A "Serious Unusual Occurrence Review Panel."

**9. USE OF FORCE GUIDELINES:**

A. General Considerations

1) The use of any type of force for punishment or reprisal is strictly prohibited.

2) Whenever possible, the determination to use force shall be made by the highest-ranking supervisor in the immediate area.

3) Whenever possible, force shall not be used against offenders with severe mental health illness (SMHI) or who are severely developmentally delayed (SDD) before appropriate medical or mental health personnel can be called to the scene. The unit's Mental Health Director shall be responsible for maintaining a list of the offenders with SMHI or SDD which shall be updated on a weekly basis or more often, if needed. This list shall be easily accessible to supervisory staff for use when needed.

4) Reasonable steps shall be taken to minimize the amount of force used.

B. Elements to Consider in the Review of Use of Force Incidents

1) The extent of the injury suffered.

2) The need for the application of force.

3) The relationship between the need and the amount of force used.

4) The threat reasonably perceived by the responsible supervisor.

5) Any efforts made to temper the severity of a forceful response.

C. For Use of Less Lethal Force

1) Less lethal force is force which normally causes neither death nor serious bodily injury.

2) Physical force, chemical agents, EMDs, intermediate/impact weapons or less lethal ammunition and devices may be used only in the following instances:

a. Prior to use of lethal force:

i) To prevent the commission of a felony, including escape;

ii) To prevent an act which could result in death or serious bodily injury to one's self or another person.

b. To defend one's self or others against any physical assault;

c. To gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate, and /or ineffective;

d. To prevent the commission of a misdemeanor;

e. To prevent serious damage to property;

f. To enforce institutional rules;

g. To prevent or quell a riot.

D. For Use of Lethal Force

1) Lethal force is force that in the manner used, is capable of causing death or serious bodily injury.

2) It may be used only as a last resort and then only in the following instances:

a. To prevent the commission of a felony, including escape;

b. To prevent an act, which could result in death or serious bodily injury to one's self or another person.

E. For use of the following:

1) **Mechanical and Flex Cuff Restraints** (See Section 10. below);

2) **Extreme Restraints (i.e., utilization of restraint chairs, four/five point restraints and strait jackets)** (See Section 11. below);

3) **Chemical Agents, Intermediate/Impact Weapons and Other Less Lethal Weapons** (See Section 12. below);

4) **Electronic Muscular Disruption Devices (EMD's)** (See Section 13. below);

5) **Lethal Weapons** (Section 14. below);

6) **Miscellaneous (i.e., pressurized water hoses and canine units)** (See Section 15. below).

**10. SECURITY UTILIZATION OF MECHANICAL AND FLEX CUFF RESTRAINTS**

A. When defining the specific written procedures governing application methods for each type of restraint as required in Section 5., the purpose shall be to minimize the possibility of injury to staff and maximize the effectiveness of the restraint device.

B. Mechanical and/or flex cuff restraints shall never be used in the following ways:

1) As a method of punishment;

2) In a way that causes undue physical discomfort, inflicts unnecessary physical pain, or restricts the blood circulation or breathing of the offender;

3) For periods of time longer than justified under the circumstances;

4) Restraints shall never be used around the head or neck of an offender.

C. Mechanical and/or flex cuff restraints may be used when reasonably necessary, including the following instances:

1) In transporting or moving an offender within or outside of the institution in accordance with institutional procedure;

2) When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape. Use of restraints in these circumstances shall be approved by a designated supervisor and be in accordance with institutional procedure. Such approval shall be obtained in advance, if possible. (See Department Regulation No. C-03-003 “Escorted Absences” for additional information).

D. After mechanical or flex cuff restraints are applied, offenders restrained in a prone (face-down) position shall remain under constant and uninterrupted visual observation due to the risk of positional asphyxia. As soon as the condition requiring the utilization of restraints has been brought under control, the offender shall then be placed in an alternate position, preferably seated or upright to avoid breathing distress.

E. Refer to Health Care Policy No. HC-29 “Utilization of Restraints for Medical and Mental Health Management Orders” and Health Care Policy No. HC-38 “Suicide Prevention, Suicide Intervention and Post Suicide Management” for additional information on the use of mechanical restraints and/or flex cuff restraints.

F. Restraint management of pregnant offenders shall be in accordance with Health Care Policy No. HC-08 "Pregnancy Management" as follows:

1) Pregnant offenders will never be handcuffed behind the back or restrained utilizing leg irons. The electronic restraint belt or electronic restraint belt shall never be used on a pregnant offender.

2) In cases where pregnancy is not visually obvious, offenders will be restrained utilizing handcuffs and waist chain.

3) In cases where pregnancy if visually obvious, offenders will be restrained utilizing only handcuffs.

4) Restraints shall not be utilized during labor or delivery. After the offender is moved from the Labor and Delivery unit, restraints will be applied in accordance with sit down procedures unless a Medical Authority orders flexible restraints.

**11. EXTREME RESTRAINTS (i.e., UTILIZATION OF RESTRAINT CHAIRS, FOUR/FIVE POINT RESTRAINTS AND STRAITJACKETS)**:

A. General

1) Extreme restraints shall never be used in the following ways:

a. As a method of punishment;

b. In a way that causes undue physical discomfort, inflicts unnecessary physical pain or restricts the blood circulation or breathing of the offender;

c. For periods of time longer than justified under the circumstances.

2) Extreme restraints may be utilized only when reasonably necessary for medical/mental health purposes or for security purposes and in accordance with the procedures of this Section.

3) Authority for the initial utilization of extreme restraints pursuant to this Section must be given by the Warden or designee (who must be a Unit Manager or above).

4) Unit extreme restraint procedures developed for medical/mental health purposes pursuant to the provisions of this Section shall include approval from the unit's Health Authority.

B. Procedures for Medical/Mental Health Purposes

The unit's Health Authority or designee shall be notified to assess the offender’s medical/mental health condition and shall then advise whether, on the basis of serious danger to self or others, the offender should be placed under medical/mental health supervision and if there exists a medical/mental health necessity for the continued use of extreme restraints. Should it be determined that a medical/mental health emergency requiring extreme restraints does exist, Health Care Policy No. HC-29 “Utilization of Restraints for Medical and Mental Health Management Orders” and Health Care Policy No. HC-38 “Suicide Prevention, Suicide Intervention and Post Suicide Management” shall be followed.

C. Procedures for Security Purposes

When the unit's Health Authority or designee (or after initial approval of the Warden or designee) does not find any medical/mental health contraindication that an offender is to be placed in the restraint chair, four/five point restraints or straitjacket, the offender shall be placed in a camera observation cell (if available). If a camera observation cell is not available, direct complete visual observation of the offender must be continuous until the initial medical/mental health assessment is completed and should continue at no greater than fifteen minute intervals thereafter.

D. Procedures While Restrained

1) Medical personnel on duty shall make an initial assessment after placement of an offender in any type of extreme restraints and shall follow with assessments at least every 12 hours. This includes an assessment of the medical and mental health status of the offender to determine if modification or discontinuation of the extreme restraint is appropriate for medical or mental health reasons. The unit's Health Authority or designee must be notified of any abnormal findings.

2) Trained staff (which may include a Correctional Officer certified in first-aid) shall examine the offender every two hours and document the

presence or absence of swelling and/or discoloration of extremities, the adequacy of blood circulation and any other potential risk to the offender's health. Any abnormality should be reported immediately to the appropriate medical or mental health staff.

3) Release from extreme restraints for toilet, sanitation and nourishment functions shall be documented and arranged at intervals no greater than every two hours. (If, after five two-hour cycles in the restraint chair, the offender cannot be released from such restraint, then he must be released from the chair and be alternatively restrained for a minimum of two hours before he is placed back in the chair). The record shall reflect approximate consumption of solids and liquids.

E. After Use

Upon release from extreme restraints, the offender shall be examined by qualified medical personnel.

**12. USE OF CHEMICAL AGENTS, INTERMEDIATE/IMPACT WEAPONS AND OTHER LESS LETHAL WEAPONS:**

A. Chemical agents, intermediate/impact weapons or less lethal munitions and devices shall not be used as punishment under any circumstances and may be used against an offender or a group of offenders only in the following circumstances:

1) To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

2) To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

3) To regain control of the institution or part of it.

B. The use of chemical agents, intermediate/impact weapons or less lethal munitions and devices is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

C. A determination for corporate or mass use of chemical agents, intermediate/impact weapons or less lethal munitions and devices shall be made by the Warden or designee (who should be the highest ranking supervisor on duty in the immediate area.)

D. Chemical agents, intermediate/impact weapons or less lethal munitions and devices shall not:

1) Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination for use under these circumstances, or against an individual offender, or a restrained offender (when the circumstances are serious enough and deemed necessary) should be made by the highest ranking supervisor on duty in the area where the incident is occurring.

2) Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.)

3) Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

E. After Use

1) When chemical agents, intermediate/ impact weapons or less lethal munitions and devices have been used

a. Affected individuals shall be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control. The offender shall also be examined by qualified medical personnel.

b. Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

2) All instances in which chemical agents are used shall be reported in accordance with Section 8. of this regulation.

**13. USE OF ELECTRONIC MUSCULAR DISRUPTION DEVICES (EMD's):**

A. For the purpose of this Section, EMD's shall include only the electronic capture shield, electronic restraint belt system and electronic transport vest. (Refer to Department Regulation No. C-02-006A "Use of Taser®" for specific procedures regarding its use).

B. EMD's <u>shall not</u>:

1) Be used as punishment under any circumstances;

2) Be used continuously and unjustifiably used against an offender;

3) Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.)

4) Be used against any individual known to have been exposed or subjected to chemical agents containing flammable substances or any other product(s) using a potentially flammable propellant until a minimum of five minutes has passed allowing for evaporation of the propellant or unless the individual has completed the de-contamination process required after such exposure;

5) Be used around known sources of flammable gases, liquids or solids;

6) Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

C. EMD's <u>may be</u> used against an offender or a group of offenders only in the following circumstances:

1) To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

2) To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

3) To regain control of the institution or part of it.

D. The use of EMD's is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

E. Electronic Capture Shield and Electronic Transport Vest

The electronic capture shield and electronic transport vest shall not be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination to use the electronic capture shield or electronic transport vest under these circumstances, or against an individual offender, shall be made by the highest ranking supervisor on duty in the area where the incident is occurring.

F. Electronic Restraint Belt

1) Use of the electronic restraint belt and electronic transport vest in the circumstances defined in Section 13.F.2)) below shall be made by a designated supervisor and in accordance with institutional procedures. Such approval shall be obtained in advance, if possible.

2) The electronic restraint belt may be used when reasonably necessary, including but not limited to, the following instances:

a. When transporting or moving an offender within or outside of the institution in accordance with institutional procedures;

b. When transporting an offender whose medical condition is not conducive to full use of restraints;

c. When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape;

d. During court appearances when the Court issues an order that the other restraints be removed (see Department Regulation No. C-03-003 "Escorted Absences" for additional information) or other such activities where the use of restraints that are not visible or prominently observable is preferred.

3) The electronic restraint belt and electronic transport vest should never knowingly be used on the following offenders:

a. Pregnant females;

b. Elderly offenders over 65 years of age;

c. Wheelchair bound;

d. Severely ill offenders:

i. Cardiac: Offenders with pacemakers or defibrillators, coronary artery disease or congestive heart failure;

ii. Liver: Offenders with cirrhosis and swelling of the legs or abdomen;

iii. Kidney: Offenders on dialysis;

iv. Stroke: Offenders that have trouble ambulating and therefore, use a cane or walker;

v. HIV: Offenders with a CD4 count of 50 or less;

vi. Lung: Offenders with chronic obstructive pulmonary disease (COPD) or asthma bad enough to require more than one inhaler for treatment;

vii. Cancer: Offenders with a current diagnosis of cancer.

4) Except as stated in Sections 13.F.1) and 2), the electronic restraint belt and electronic transport vest may also be otherwise used at the discretion of the Warden or designee in accordance with the provisions of this Section.

G. After Use

1) When EMD's have been used, affected offender(s) that suffered the electrical shock(s) shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

2) Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

3) All instances in which EMD's are used shall be reported in accordance with Section 8. of this regulation.

**14. USE OF LETHAL WEAPONS:**

A. Lethal weapons should be utilized only as a last resort and only as authorized in accordance with Department Regulation No. C-01-008 “Firearms and Weaponry Training.”

B. In the utilization of firearms, the following procedures shall be followed:

1) Verbal warning (if feasible) to cease actions;

2) Warning shot (if feasible) to ensure that the offender is absolutely aware of the seriousness and probable consequence of his actions;

IMPORTANT NOTE: The only exception of the provisions of Sections 14. B.1) and 2) would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical. Warning shots may not be fired where it is foreseeable that a member(s) of the public may be endangered.

3) Shoot to disable (render offender incapable of continuing with action prompting use of lethal force.)

C. Departmental employees shall conduct the transportation phase of emergency evacuations under a use of force policy with a maximum force threshold of less lethal, unless the Correctional or Probation and Parole Officer is faced with a situation where lethal force is justified as enumerated in La. R.S. 14:20, i.e. justifiable homicide.

D. After Use

1) When a weapon has been utilized, the affected individual(s) that suffered the wound shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

2) Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

3) In accordance with Department Regulation No. C-01-008 "Firearms and Weaponry Training," a Shooting Review Panel appointed by the Secretary shall review the circumstances surrounding each incident where an offender or other person is shot by departmental staff and shall make recommendations as necessary. The meetings shall occur at least quarterly but may occur on an incident-by-incident basis at the discretion of the Chief of Operations.

4) All instances in which lethal weapons are used shall be reported in accordance with Section 8. of this regulation.

**15. MISCELLANEOUS:**

A. The use of pressurized water hoses to quell large group disturbances is authorized. (Note: Must have written institutional policy to utilize).

B. Canine units are authorized for all operational units with appropriately trained staff and canines pursuant to Department Regulation No. C-01-016 "Canine Units." (Note: Must have written institutional policy to utilize).

**16. SECURITY EQUIPMENT:** All security equipment shall be stored in a secure but readily accessible depository outside of offender housing and activity areas. A written record and inventory shall be maintained at each institution of all routine and emergency distribution of security equipment. Inventories shall be maintained and updated as necessary.

James M. Le Blanc
Secretary

Attachment: Weapons List

This regulation supersedes Department Regulation No. C-02-006 dated 20 December 2010 and Page Eleven dated 14 November 2012.